WILLIAM L. SCHMIDT, SBN 206870
Email: legal.schmidt@gmail.com
JEFFREY W. EISINGER, SBN 109299
Email: legal.schmidt.jeff@gmail.com
WILLIAM L. SCHMIDT, ATTORNEY AT LAW, P.C.
PO Box 25001
Fresno, CA 93729
Telephone 559.261.2222
Facsimile 559.436.8163

Attorney for Plaintiffs:
GLORIA REDONDO and the ESTATE
Of ARMANDO VARGAS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ARMANDO VARGAS, AND GLORIA REDONDO, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO THE ESTATE OF ARMANDO VARGAS,<br><br>Plaintiff,<br><br>v.<br><br>DOUG BINNEWIES, CODIE HART, PAMELA AHLIN, JULIA PATTERSON, DOE DIRECTOR OF NAPA STATE HOSPITAL, CORRECT CARE SOLUTIONS, LLC, AND DOES 1-30, INCLUSIVE,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. Violation of 8th Amendment (County)**<br><br>**2. Violation of 8th Amendment (State)**<br><br>**3. Due Process**<br><br>**4. Speedy Trial**<br><br>**5. Negligence**<br><br>**6. Govt. Code §§ 844.6 & 845.6**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

[1]

This lawsuit seeks to recover damages for civil rights violations including lack of due process pursuant to the Constitution of the State of California and the Fourteenth Amendment to the U.S. Constitution, the right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the U.S. Constitution and the right to a speedy trial pursuant to the 6th Amendment to the U.S. Constitution as well as the Constitution of the State of California. The Plaintiffs also assert various state law claims.

## JURISDICTION

1. This Complaint asserts causes of action arising under the U.S. Constitution and the laws of the State of California. Pursuant to 42 U.S.C. §1983, the Plaintiffs allege causes of action for lack of due process, cruel and unusual punishment, and denial of the right to a speedy trial in violation of the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution as well as provisions of the California constitution, resulting in the wrongful death of Armando Vargas. These claims, along with the state law claims for negligence, all arise out of a series of events in 2015 which culminated in the wrongful death of Armando Vargas on September 20, 2015.

2. This court has subject matter jurisdiction over the claims of the Plaintiffs pursuant to 28 U.S.C. §1331. The Plaintiffs' state law claims derive from the same nucleus of operative facts. The state law claims are so related to the federal claims over which this Court has original jurisdiction that it is part of the same case or controversy under Article III of the U.S. Constitution. Thus, this Court may exercise supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

## VENUE

3. A substantial part of the acts and omissions giving rise to the Plaintiffs' claims occurred in Mariposa County, within the Eastern District of California. At all times mentioned herein, Defendant DOUG BINNEWIES was Sheriff of Mariposa County and Defendant CODIE HART was a Lieutenant in charge of the jail in which Armando Vargas hung himself. All of the Defendants reside or do business within the State of California. Venue is thus proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## THE PARTIES

4. Plaintiff GLORIA REDONDO ("REDONDO") is the mother of the decedent Armando Vargas and, at all times mentioned herein, was a citizen of the United States of America and the State of California. Armando Vargas did not have any children and was not married at the time of his death. He died intestate. Plaintiff REDONDO brings this action in her individual capacity and as the successor in interest of the Estate of Armando Vargas for the federal and state law violations set forth herein. Plaintiff REDONDO is informed and believes that no other person has a superior right to commence any action or proceeding or to be substituted for the Estate of Armando Vargas in this proceeding. No proceeding is now pending in the State of California for the administration of the Estate of Armando Vargas.

5. Defendant DOUG BINNEWIES ("BINNEWIES") was the Sheriff of Mariposa County at all times mentioned herein. Defendant CODIE HART ("HART") was the Lieutenant in charge of the county jail in Mariposa at all times mentioned herein.

6. Defendant DOE Director was, at all times mentioned, the Director of the Napa State Hospital ("Doe Director") which is a psychiatric hospital operated by the State of California's Department of State Hospitals.

7. Defendant PAMELA AHLIN ("AHLIN") was the Director of the California Department of State Hospitals, at all times mentioned herein.

8. Defendant JULIA PATTERSON ("PATTERSON") was a Senior Psychologist Specialist employed by Defendant NAPA at all times mentioned herein.

9. Defendant CORRECT CARE SOLUTIONS, LLC ("CORRECT") is a corporation doing business in the State of California. At all times mentioned herein, the Plaintiffs are informed and believe that CORRECT held a contract to provide medical services to inmates in the custody of the Mariposa County Jail.

10. The true names and capacities of Defendants DOES 1 through 15, inclusive, are presently unknown to the Plaintiffs. The Plaintiffs allege that each of these DOE Defendants were responsible for and caused the acts and injuries alleged herein. The Plaintiffs allege that these DOE Defendants were, at all times mentioned herein, employees, agents or contractors of either Mariposa County, Defendant BINNEWIES or CORRECT and were responsible, along with the named Defendants, for conditions and/or events at the county jail which resulted in the death of Armando Vargas. These Defendants, along with the named Defendants, were charged with the supervision, management, monitoring, care and control of inmates in the jail. They, along with the named Defendants, were deliberately indifferent to the medical needs and safety of Vargas, failed to provide or assist him in obtaining appropriate psychiatric, psychological, and medical care, failed to take measures to prevent him from committing suicide, violated his civil rights, wrongfully caused his death, and/or encouraged, directed, enabled, and/or ordered other Defendants to engage in such conduct. The Plaintiffs further allege that some or all of these Defendants, along with the named Defendants, were responsible for the training, supervision, and/or conduct of other Defendants involved in the conduct alleged herein. And, the Plaintiffs

allege that some or all of these Defendants, along with the named Defendants, were responsible for the promulgation and perpetuation of policies, de facto and explicit, which caused the injury and death of Vargas and thereby caused injury to the Plaintiffs.

11. The true names and identities of Defendants DOES 16-30, inclusive, are presently unknown to the Plaintiff.  The Plaintiff alleges on information and belief that each of these DOE Defendants were responsible for and caused the acts and injuries alleged herein.  The Plaintiff alleges on information and belief that each of these DOE Defendants were, along with Defendant DOE Director, at all times mentioned herein, employees of Napa State Hospital or the Department of State Hospitals and played a role in the treatment of Armando Vargas while he was a patient at Napa and that said treatment, or lack thereof, directly contributed to his death. These Defendants, along with the named Defendants, were charged with the supervision, management, monitoring, and control of patients at Napa.  They, along with the named Defendants, were deliberately indifferent to the medical needs and safety of Vargas, failed to provide or assist him in obtaining appropriate psychiatric, psychological, and medical care, violated his civil rights, wrongfully caused his death, and/or encouraged, directed, enabled, and/or ordered other Defendants to engage in such conduct.  The Plaintiffs further allege that some or all of these Defendants, along with the named Defendants, were responsible for the training, supervision, and/or conduct of other Defendants involved in the conduct alleged herein.  And, the Plaintiffs allege that some or all of these Defendants, along with the named Defendants, were responsible for the promulgation and perpetuation of policies, de facto and explicit, which caused the injury and death of Vargas and thereby caused injury to the Plaintiffs.

12. The Plaintiff will seek to amend this Complaint at such time as the true names and identities of the DOE Director and the DOE Defendants 1 through 30 are ascertained.

[ 5 ]

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. The Plaintiffs filed timely claims with the County of Mariposa and the State of California. The County of Mariposa rejected the claim on March 22, 2016. The Victim Compensation and Government Claims Board rejected the claim against the State of California on March 17, 2016.

## GENERAL ALLEGATIONS

14. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 13 of this Complaint as though fully set forth at this point.

15. The Plaintiffs allege that the conduct of each Defendant deprived Vargas of his constitutional rights to life, to due process under the law, to a speedy trial, to medical and mental health care for his serious, but treatable, medical and mental health needs, as well as proper custodial care and supervision, and caused him to suffer grievous harm and physical injuries prior to his death, and ultimately caused his death while he was in the custody of the Defendants.

16. Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did do so, by authorizing, acquiescing, condoning, acting, omitting, or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain adequate training, supervision, and staffing with deliberate indifference to the rights of Vargas and the Plaintiffs, by failing to maintain proper and adequate policies, procedures, and protocols, by failing to ensure Vargas was given effective medical and mental

health care, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers, mental health providers, and employees under their direction and control. Should the discovery which the Plaintiffs are entitled to conduct yield adequate facts, the Plaintiffs reserve the right to amend this complaint to set forth a cause of action against Mariposa County and/or the Sheriff's Department of said county based on Monell liability.

17. Whenever and wherever reference is made in this complaint to any act of the Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly, or severally.

18. On or about February 1, 2015 Armando Vargas was arrested in Mariposa County.

19. On or about February 9, 2015 the Mariposa County Superior Court ("Court") ordered that Armando Vargas be given a mental health evaluation based on concerns expressed by Vargas' own counsel. In the report dated February 16, 2015 by Dr Phillip Hamm, Ph.D., the county was put on notice that Vargas was a danger to himself and others. The report further stated that Vargas would need ongoing anti-psychotic medication to restore his mental competency. Based on the report, on February 19, 2015 the Court found that Vargas was not competent to stand trial or to assist with his defense.

20. After further evaluations, on March 24, 2015 the Court ordered that Vargas be transferred to Napa State Hospital. The Court further ordered the involuntary administration of any anti-psychotic medications necessary to assist Vargas with regaining competency.

21. Armando Vargas had a long history of suicide attempts and had been likewise repeatedly diagnosed as having multiple mental health disorders, including schizophrenia and psychosis. In 2004, a team at Patton State Hospital determined that his mental competency was contingent

on the continued administration of various drugs, including an anti-psychotic, an anti-depressant, and a drug to treat schizophrenia. More recently, as part of his evaluation by the Court, a psychologist concluded that Vargas suffered from a psychiatric/psychologic disorder which had been undertreated. He further stated that the symptoms were consistent with schizophrenia.

22. Notwithstanding the foregoing, officials at Napa removed Vargas from any and all psychological medications shortly after his arrival. In a report to the Court dated May 27, 2015 Defendant PATTERSON stated that Vargas did not endorse or report any symptoms of mental illness and that he was competent to stand trial. Vargas was thereafter returned to the custody of Defendants BINNEWIES and HART at the Mariposa County Jail.

23. In a letter dated June 27, 2015 Vargas notified the Court that he was his own jurisdiction because of his birthrights and asked that all charges against him be dismissed.

24. On July 9, 2015 the Court once again sought a mental health evaluation of Vargas. On August 20, 2015, based on said evaluations, the Court found that Vargas was still incompetent to stand trial and once again ordered that he be transported to Napa.

25. There was a delay in transferring Vargas back to Napa. While in the custody of Defendants BINNEWIES and HART in the jail, Vargas expressed in a letter from the jail dated August 12, 2015 to his mother that he was afraid to go back to Napa based on his prior experience there. During his time in custody after being returned to jail from Napa, the Defendants BINNEWIES, HART, and CORRECT were also denying Vargas access to the drugs that had been historically used to treat his mental illness.

26. In a subsequent letter dated August 26, 2015 to the Harper Medical Group, also written from the jail, Vargas stated his belief that he would be killed if returned to Napa and that he

would not let that happen.

27. On the morning of September 15, 2015, Vargas was found hanging from the bunk in his cell at the county jail. He was ultimately declared brain dead and expired on September 20, 2015 when his heart stopped beating.

28. Given Vargas' known background of suicide attempts, his extensive and well documented history of psychotic/schizophrenic behavior, his letters from the jail stating his fear of being sent back to Napa and intention to not let that happen, and other indicators, Defendants BINNEWIES, HART, and CORRECT had more than ample knowledge that Vargas posed a significant risk to himself.

### FIRST CAUSE OF ACTION

### Violation of 8th Amendment by Defendants BINNEWIES and HART – Cruel and Unusual Punishment

29. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 28 of this Complaint with the same force and effect as though fully set forth at this point.

30. Defendants BINNEWIES, HART, and DOES were deliberately indifferent to the well-being of Vargas. Said Defendants were on notice of Vargas' past history of suicide attempts, the multiple reports from experts which documented his psychotic/schizophrenic behavior, the concerns of the Court as to his mental competency, and his own expression of an immediate intent to commit suicide.

31. In spite of having knowledge of all of these danger signs, Defendants BINNEWIES, HART, and DOES clearly manifested their deliberate indifference to the well-being of Vargas.

Based on information and belief, the Plaintiffs allege that the deliberate indifference of BINNEWIES, HART, and DOES was specifically exhibited by:

   a). Failure to place Vargas in a hang-proof cell;

   b.) Failure to properly medicate and monitor Vargas; and

   c.) Failure of jail staff to immediately commence CPR on Vargas.

32. As a result of the deliberate indifference of BINNEWIES, HART, and DOES, Armando Vargas was left vulnerable to his own well-documented mental delusions in an environment that offered him totally inadequate protection against himself.  Predictably, he was easily able to take his own life in his cell due to the deliberate indifference and careless disregard of the Defendants.

33. The conduct of BINNEWIES, HART, and DOES was cruel and unusual punishment in violation of the 8th Amendment to the U.S. Constitution and was willful, wanton, malicious, and done with a deliberate indifference, as well as reckless disregard, for the rights and safety of Armando Vargas and therefore warrants an award of exemplary and punitive damages to the Plaintiffs.  These Defendants violated the Plaintiffs' rights to familial association and companionship and caused the wrongful death of the decedent.  Accordingly, the Defendants are liable to the Plaintiffs for compensatory, including general and special, damages, as well as punitive damages under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION

**Violation of 8th Amendment by Defendants PAMELA AHLIN,  DOE Director, and JULIA PATTERSON -**

**Cruel and Unusual Punishment**

[10]

34. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 33 of this Complaint with the same force and effect as though fully set forth at this point.

35. Armando Vargas was transferred to Napa by order of the Mariposa County Superior Court. The judge further ordered that, if necessary, Vargas was to be involuntarily administered any drugs deemed necessary to assist in the effort to restore him to competency. After spending several months in the custody of Napa, Vargas was returned to the custody of Defendants BINNEWIES and HART. Defendant PATTERSON, a Senior Psychologist Specialist employed by Napa, authored a report dated May 27, 2015. In this report she stated that, despite his long history of serious mental issues that had been extensively documented by many health professionals, Vargas had been faking his psychotic symptoms and that the hospital had removed him from all anti-psychotic medications. PATTERSON further stated that Vargas was fully competent to stand trial. The Plaintiffs are informed and believe that PATTERSON'S diagnosis was flawed and part of an intentional pattern at Napa instituted at the direction of AHLIN and Doe Director and that it was plainly and tragically contradicted by the decision of Vargas to take his own life a short time later.

36. Upon his return to the custody of Defendants BINNEWIES and HART, Vargas was still found to be incompetent to stand trial. He continually manifested delusional thoughts, including the idea that he would be killed if sent back to Napa. On August 20, 2015, the Court ordered that he be returned to Napa once again. The Court also once again ordered that, if necessary, anti-psychotic drugs be administered involuntarily in an effort to restore his competency for trial.

37. Unfortunately, Napa never complied with the Court's order. The Plaintiff is informed and believes that this lack of compliance was due to the deliberate indifference of Defendant

AHLIN and Defendant DOE Director to the welfare of patients such as Armando Vargas. Specifically, AHLIN and DOE Director operated the Napa State Hospital in a manner which left it chronically unable to promptly accept inmates per orders of the superior courts of the state. As a result of the policies and practices of AHLIN and DOE Director, Vargas languished in the custody of Defendants BINNEWIES and HART in the county jail as his mental condition worsened. On September 10, 2015 the Court indicated that it would issue an Order to Show Cause as to why Vargas had not yet been transported back to Napa if he was still in the custody of the SHERIFF on October 1, 2015.

38. On September 15, 2015 Vargas hung himself while in the custody of Defendants BINNEWIES and HART. Had Defendant AHLIN and Defendant DOE Director complied with the order of the Court, Vargas would not have continued to be in a county jail which was inadequately staffed, trained, and concerned enough to properly care for him. Delay in admission to mental health facilities unduly punishes incompetent defendants such as Vargas. Even minor delays, as shown in this very case, can cause extreme distress and deterioration in the condition of mentally ill defendants.

39. The deliberate indifference displayed by Defendants, PATTERSON, AHLIN, DOE Director and other DOES to the mental health and welfare of Vargas by failing to properly treat him during his stay at the hospital and by subsequently failing to transport him from custody in the county jail to the state hospital amounted to cruel and unusual punishment prohibited by the 8th Amendment to the U.S. Constitution. This conduct was willful, wanton, malicious, and done with a deliberate indifference, as well as reckless disregard, for the rights and safety of Armando Vargas and therefore warrants an award of exemplary and punitive damages to the Plaintiffs. Accordingly, the Defendants AHLIN, PATTERSON, DOE Director and DOES are

liable to the Plaintiffs for compensatory, including general and special, damages, as well as punitive damages under 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION

**Violation of California Constitution, Article I, §7 and the**

**14th Amendment to the U.S. Constitution**

40. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 39 of this Complaint with the same force and effect as though fully set forth at this point.

41. Article I, §7 of the California Constitution and the 14th Amendment to the U.S. Constitution prohibit the government from depriving any person of life, liberty, or property without due process of law.

42. The unreasonable and inexcusable delays by Defendants AHLIN, and DOE Director in admitting incompetent defendants such as Armando Vargas violated this right.  By not timely accepting the transfer of incompetent defendants such as Armando Vargas who have been committed solely on account of their incapacity to proceed to trial, said Defendants caused him to be held in custody for more than the reasonable time necessary to determine whether there was a substantial probability that he could attain competency in the foreseeable future, all in violation of his civil rights.

### FOURTH CAUSE OF ACTION

**Violation of California Constitution, Article I, §15 and the**

**6th Amendment to the U.S. Constitution**

43. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 44 of this Complaint with the same force and effect as though fully set forth at this point.

44. Article I, §15 of the California Constitution and the 6th Amendment to the U.S. Constitution guarantee every criminal defendant the right to a speedy trial. The delays by Defendants AHLIN and DOE Director in admitting criminal defendants to Napa, such as Vargas, who have been found incompetent to stand trial violated this right.

45. The unreasonable and inexcusable practice of not timely accepting the transfer of incompetent defendants from county jails is unjustified. Further, this practice is prejudicial to the speedy trial rights of incompetent defendants such as Armando Vargas by causing them to be held in jails for prolonged periods of time, and by causing such defendants to not receive the course of treatment that serves as the basis for the suspension of their court proceedings during this unduly prolonged imprisonment.

## FIFTH CAUSE OF ACTION

### Negligence

46. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 45 of this Complaint with the same force and effect as though fully set forth at this point.

47. Defendant CORRECT provides medical care to the inmates incarcerated by BINNEWIES and HART in the County of Mariposa. BINNEWIES, HART, and CORRECT owed a duty to Armando Vargas as the providers of medical treatment and care while he was incarcerated in the Mariposa County Jail. The Plaintiffs are informed and believe that CORRECT had access to information pertaining to the mental problems experienced by Armando Vargas and his history of suicide attempts. The Plaintiffs contend that CORRECT negligently and carelessly

treated Armando Vargas without due concern for his known mental state and failed to use reasonable and proper care and skill to keep him from killing himself. Thus, CORRECT and its employees, agents and contractors are responsible for the pain and suffering experienced by Armando Vargas and his loss to the Plaintiffs. The Plaintiffs further allege that Defendants BINNEWIES, HART, and DOES were negligent in contracting with CORRECT to provide medical care for their inmates, including Armando Vargas.

## SIXTH CAUSE OF ACTION

### California Government Code §§ 844.6 and 845.6

48. The Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 47 of this Complaint with the same force and effect as though fully set forth at this point.

49. Pursuant to California Government Code §§ 844.6 and 845.6, the Defendants BINNEWIES, HART, in addition to any DOE Defendants in their employ or control, had a duty to monitor, check and respond to the persons under their custody, supervision and control.

50. The Defendants knew, or had reason to know, that Vargas was in need of physical and/or mental health care while incarcerated in the jail and failed to take reasonable action to summon or provide competent and reasonable care, including the administration of various medications which had proven helpful to Vargas in the past.

51. As a result of the Defendants' breach of said duty to act reasonably in the provision of medical care to Vargas, the Plaintiffs have suffered damages as set forth herein and incorporated by reference.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully seek relief as follows:

1. For compensatory damages, including general and special damages, under federal and state law, in the amount to be proven at trial;

2. For punitive damages in an amount to be proven at trial sufficient to punish and deter;

3. For reasonable costs and attorney's fees pursuant to 42 U.S.C. 1983, and/or any other applicable statute, regulation, ordinance, or law, whether state or federal, that provides for reasonable costs and/or attorney's fees;

4. For pre-judgment interest according to law; and

5. For such other and further relief as may be deemed just and proper by this Court.

**DEMAND FOR JURY TRIAL**

The Plaintiffs do hereby demand a jury trial.

Dated: August 23, 2016

By: _____/s/ William L. Schmidt_____
William L. Schmidt,
Attorney for Plaintiffs