8  UNITED STATES DISTRICT COURT

9  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 THE ESTATE OF ARMANDO VARGAS and GLORIA REDONDO, | No. 1:16-cv-01240-DAD-EPG |
| 12 | |
| 13 Plaintiffs, | |
| 14 v. | <u>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND</u> |
| 15 DOUG BINNEWIES, CODIE HART, DEPUTY COOPER, DEPUTY SMALLS, DEPUTY REEDER, DEPUTY DAY, DEPUTY DETRICH, DEPUTY DAY, PAMELA AHLIN, and DOLLY MATTEUCCI, | |
| 16 | (Doc. Nos. 27, 34) |
| 17 | |
| 18 Defendants. | |

19

20  This matter is before the court on two motions filed by defendants to dismiss plaintiffs'

21  first amended complaint for failure to state a claim. Hearings on these motions were held on

22  January 19, 2017, and February 21, 2017. Attorneys Jeffrey Eisinger and William Schmidt

23  appeared on behalf of plaintiffs Estate of Armando Vargas and Gloria Redondo. Attorney Jena

24  Harlos appeared on behalf of defendants Sheriff Doug Binnewies, Lieutenant Codie Hart, and

25  Deputies Cooper, Smalls, Reeder, Day, Detrich, and Jay. Deputy Attorney General Wilfred Fong

26  appeared on behalf of defendants Pamela Ahlin and Dolly Matteucci. For the reasons set forth

27  below, the court will grant the defendants' motions to dismiss and also grant plaintiffs leave to

28  file a second amended complaint.

1

## BACKGROUND

This case concerns the suicide of Armando Vargas on or about September 15, 2015, while he was being held in pretrial custody at the Mariposa County Jail. According to plaintiffs' first amended complaint, prior to his death, Mr. Vargas had a long history of suffering from mental health disorders, including schizophrenia, delusions, and psychosis. (Doc. No. 11 ¶ 18.) He also had a history of attempted suicide and was previously designated a suicide risk by both prison officials and mental health professionals. (*Id.*)

The first amended complaint also alleges the following. Mr. Vargas was arrested on February 1, 2015 and detained at the Mariposa County Jail, a relatively small facility with a maximum capacity of approximately sixty inmates. (*Id.* ¶ 15) On February 9, 2015, based on concerns expressed by Mr. Vargas's counsel, the Mariposa County Superior Court ordered a mental evaluation of Mr. Vargas. (*Id.* ¶ 16.) Based on that evaluation, the state trial court deemed Mr. Vargas incompetent to stand trial or assist in his own defense. (*Id.*) Therefore, on March 24, 2015, the court ordered that Mr. Vargas be transferred to the Napa State Hospital, one of five state hospitals overseen by the California Department of State Hospitals. (*Id.* ¶ 17.)[1] After a short stay at Napa State Hospital, Mr. Vargas was declared by medical staff there to be competent to stand trial and was returned to the Mariposa County Jail. (*Id.*)

Upon his return to the Mariposa County Jail, Mr. Vargas again displayed signs of mental instability. (*Id.* ¶ 19.) On July 9, 2015, the state trial court once again sought a mental evaluation of Mr. Vargas, and on August 20, 2015, it again found him incompetent to stand trial and ordered his transfer back to Napa State Hospital. (*Id.* ¶ 20.) However, Mr. Vargas never returned to Napa State Hospital. In a letter he wrote to the Harper Medical Group, dated August 26, 2015, Mr. Vargas stated he believed he would be killed if returned to the state hospital and that he would not let that happen. (*Id.* ¶ 22.) On September 15, 2015, Mr. Vargas said goodbye to jail staff and

/////

/////

---

[1] *See also* California Dep't of State Hospitals – Hospitals, http://www.dsh.ca.gov/hospitals/ (last visited Mar. 10, 2017).

other inmates. (*Id.* ¶ 23.) He was found hanging from a bunk in a cell shortly thereafter. (*Id.*)[2] On September 20, 2015, Mr. Vargas was declared brain dead and his heart stopped beating. (*Id.*)

Plaintiff Gloria Redondo, Mr. Vargas's mother, commenced this action as the successor in interest of, and with, Mr. Vargas's estate, on August 23, 2016.[3] Broadly speaking, plaintiffs bring this action against two groups of defendants: (1) defendants Sheriff Doug Binnewies, Lieutenant Codie Hart, and Deputies Cooper, Smalls, Reeder, Day, Detrich, and Jay, members of the Mariposa County Sheriff's Office (collectively, the "county defendants"); and (2) defendants Pamela Ahlin, the director of the California Department of State Hospitals, and Dolly Matteucci, the director of the Napa State Hospital (collectively, the "state defendants"). On November 8, 2016, after the parties met and conferred regarding a pleading dispute, plaintiffs filed a first amended complaint. (*See* Doc. No. 28 at 1.) Therein, plaintiffs state the following claims: (1) deliberate indifference to a serious medical need under the Fourteenth Amendment against the county defendants; (2) deliberate indifference to a serious medical need under the Fourteenth Amendment against the state defendants;[4] (3) an equal protection violation under the Fourteenth Amendment against the state defendants; (4) negligence against the county defendants; and (5) violations of California Government Code §§ 844.6 and 845.6 against the county defendants.

On December 9, 2016, the state defendants filed a motion to dismiss all claims brought against them. (Doc. Nos. 27–28.) On January 3, 2017, plaintiffs filed their opposition to that motion. (Doc. No. 30.) On January 10, 2017, the state defendants filed their reply. (Doc. No. 31.) On January 19, 2017, the court heard argument on the state defendants' motion.

/////

---

[2] Plaintiffs' first amended complaint does not specify when Mr. Vargas's suicide was discovered, whether that same day, or in the days between the 15th and the 20th of September.

[3] The county defendants originally challenged plaintiff Redondo's standing to sue in this action. However, at the hearing, the county defendants withdrew their challenge in light of plaintiffs' filings.

[4] Plaintiffs appear to allege, in both their second and third causes of action, violations of the same set of due process rights under the Fourteenth Amendment against the state defendants. The court will address these allegations as a single deliberate indifference claim.

On January 24, 2017, the county defendants filed a motion to dismiss certain claims brought against them. (Doc. No. 34.) On February 7, 2017, plaintiffs' filed their opposition to that motion. (Doc. No. 37.) On February 14, 2017, the county defendants filed their reply. (Doc. No. 39.) The court heard oral argument and took under submission the county defendants' motion on February 21, 2017.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). It is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

/////

/////

4

**DISCUSSION**

**A.      Federal Civil Rights Claims**

The Civil Rights Act, pursuant to which plaintiffs allege various Fourteenth Amendment violations, provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to make out a valid claim under § 1983, a plaintiff must allege and eventually prove that (i) the conduct complained of was committed by a person acting under color of state law; (ii) this conduct deprived a person of constitutional rights; and (iii) there is an actual connection or link between the actions of the defendants and the deprivation allegedly suffered by decedent. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between her and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

/////

/////

/////

### 1. Deliberate Indifference Claims

Plaintiffs allege that the conduct of the county and state defendants each, separately, constituted deliberate indifference in violation of the due process clause of the Fourteenth Amendment.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. 14 § 1. The Fourteenth Amendment provides both procedural and substantive protections that bar certain government actions regardless of the fairness of the procedures used to implement them. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Here, because Mr. Vargas was a pretrial detainee at the time of the alleged incidents, his right to be free from cruel and unusual punishment is derived from the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016), *cert. denied sub nom. Los Angeles County, Cal. v. Castro*, 137 S. Ct. 831 (2017). The duty to protect pretrial detainees from suicide is grounded in the substantive liberty interest in adequate medical care.[5] *See Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1018 (9th Cir. 2010); *Johnson v. Meltzer*, 134 F.3d 1393, 1397 (9th Cir. 1998); *Schwartz v. Lassen Cty. ex rel. Lassen Cty. Jail (Detention Facility)*, 838 F. Supp. 2d 1045, 1052 (E.D. Cal. 2012). In particular, "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting *Carnell v. Grim*, 74 F.3d 977, 979 (9th Cir. 1996)), *overruled on other grounds by Castro*, 833 F.3d at 1076. Moreover,

---

[5] Some federal courts have suggested that this duty is also rooted in personal security rights. *See Soto v. City of Sacramento*, 567 F. Supp. 662, 673 (E.D. Cal. 1983) (explaining, in the context of a suit arising out of a pretrial detainee's suicide, that an inmate's Fourteenth Amendment liberty interest in "unjustified intrusions on personal security" required a "minimally safe cell"); *see generally Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (recognizing the constitutional right to personal security, and discussing the "historic liberty interest" traceable to the Magna Carta in being "free from . . . unjustified intrusions on personal security"). *But see* James E. Robertson, *Fatal Custody: A Reassessment of § 1983 Liability for Custodial Suicide*, 24 U. Tol. L. Rev. 807, 813 (1993) (stating that "[t]he most common approach" is to "address[] suicide as a mental health problem that implicates inmates' right to medical care").

"[i]ncapacitated criminal defendants have liberty interests in freedom from incarceration and in restorative treatment." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). When determining whether the failure to provide timely restorative treatment constitutes a violation of the Fourteenth Amendment, courts must balance the detainee's liberty interests against the legitimate interests of the state. *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)).

Generally, when considering a motion to dismiss such a claim, a district court must assess whether the plaintiff has pled sufficient facts to permit the court to infer the plaintiff had a "serious medical need" and a defendant was "deliberately indifferent" to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Simmons*, 609 F.3d at 1018 ("[W]e have previously recognized that a heightened suicide risk can present a serious medical need."). Specifically, to state a deliberate indifference claim based on an officer's failure to protect a pretrial detainee, a plaintiff must allege that: (1) the defendant made an intentional decision with respect to the conditions of plaintiff's confinement; (2) those conditions exposed plaintiff to a substantial risk of serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) the defendant caused plaintiff's injuries by not taking those measures. *Castro*, 833 F.3d at 1068–71. The defendant's failure to take reasonable measures to abate the substantial risk of serious harm must amount to "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 1071.[6]

---

[6] Until recently, the Ninth Circuit applied a single "deliberate indifference" standard to § 1983 claims, regardless of whether the plaintiff brought an Eighth Amendment claim as a convicted inmate or a Fourteenth Amendment claim as a pretrial detainee. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment . . . we apply the same standards"); *see also* Catherine T. Struve, *The Conditions of Pre-Trial Detention*, 161 U. Penn. L. Rev. 1009, 1023 (2013) (noting that the Supreme Court has not clearly spoken, and circuit courts have equivocated, as to whether pre-trial detainees have greater protections under the Fourteenth Amendment than convicted prisoners have under the Eighth Amendment). However, in *Castro v. County of Los Angeles*, the Ninth Circuit clarified

a. *County Defendants*

In their first deliberate indifference claim, plaintiffs allege that the county defendants, working in either a staff or supervisory capacity, failed to prevent Mr. Vargas's suicide while he was incarcerated at the Mariposa County Jail. Specifically, plaintiffs allege that the county defendants denied Mr. Vargas access to medication for his mental illnesses, failed to place him in a hang-proof cell, and failed to otherwise properly monitor him. (Doc. No. 11 ¶¶ 21, 27.) To support their claim, plaintiffs generally reference the existence of documentation regarding Mr. Vargas's psychotic and schizophrenic behavior, his history of suicide attempts, the fact that he was not being medicated, concerns expressed by the state court as to his mental competency, and his own expressed intent to commit suicide. (*See id.* ¶¶ 18, 26.) However, plaintiffs allege only in conclusory fashion that the county defendants were "on notice" of each of these aspects of Mr. Vargas's mental health history. (*See id.* ¶¶ 20, 26.) Plaintiffs also allege that Mr. Vargas was "well known," and that on September 15, 2015, Mr. Vargas began saying goodbye to jail staff. (*See id.* ¶¶ 15, 23).

These allegations are insufficient to support a plausible inference that a reasonable officer in the county defendants' shoes would have been aware of the heightened risk of Mr. Vargas committing suicide. In particular, plaintiffs have not alleged that any of Mr. Vargas's previously documented troubling behaviors occurred at the county jail, or that the jail officials had access to the documentation detailing Mr. Vargas's mental health condition. Moreover, plaintiff's presence and alleged behavior at the jail, alone, cannot support an inference that a reasonable officer would

/////

/////

---

that a less stringent formulation of the "deliberate indifference" standard, outlined above, applies to pretrial detainees. *See Castro*, 833 F.3d at 1068–71 (citing *Kingsley v. Hendrickson*, 576 U.S. ___, ___, 135 S. Ct. 2466, 2470 (2015)). While a plaintiff bringing a deliberate indifference claim under the Eighth Amendment must allege an objectively serious deprivation and a subjectively culpable state of mind on the part of the defendant, a plaintiff asserting deliberate indifference under the Fourteenth Amendment "need not prove those subjective elements about the [defendant's] actual awareness of the level of risk." *See id.* at 1070–71.

8

have been aware of the nature or severity of Mr. Vargas's serious medical need.[7] For these reasons, the court concludes plaintiffs have not alleged facts in their first amended complaint linking the county defendants to the alleged constitutional violation. Accordingly, as pled, this claim must be dismissed for failure to state a claim.[8]

For similar reasons, plaintiffs have also failed to allege facts sufficient to support recovery of punitive damages under § 1983. In addition to alleging an objectively unreasonable disregard to a high risk of suicide, plaintiffs must allege facts that support the plausible inference that the county defendants had knowledge of Mr. Vargas's serious medical need, and acted with recklessness or callous indifference to his rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) ("[W]e have recognized that [i]t is well-established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." (citations and internal quotations omitted)).

      b.    *State Defendants*

Plaintiffs assert a separate deliberate indifference claim against the state defendants, based on the state defendants' alleged failure to provide restorative treatment or to timely accept transfer of Mr. Vargas from the county jail.

---

[7] Plaintiffs suggest that they currently possess little evidence of what occurred inside the jail leading up to Mr. Vargas's death. However, that lack of evidence should not prevent plaintiffs from sufficiently alleging facts to state a plausible claim. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) ("At the motion to dismiss stage, [the plaintiff] need not support his allegations with evidence, but his complaint must allege sufficient facts to state the elements of [his] claim." (citing *Twombly*, 550 U.S. at 570)).

[8] In their opposition to the pending motion, plaintiffs have presented a number of facts that may bear on the issue of deliberate indifference. For example, plaintiffs state that according to a former inmate at the jail, the county defendants reviewed all outgoing inmate mail, including certain letters Mr. Vargas wrote revealing his mental condition, before they were sent from the jail. (Doc. No. 37 at 3.) Plaintiffs explain that the state court issued an order on July 30, 2015, finding Mr. Vargas incompetent to stand trial, and served that order on the Mariposa County Jail. (*Id.* at 5.) Plaintiffs also detail interactions between plaintiff Redondo and defendant Hart regarding Mr. Vargas's medical condition, and defendant Hart's assurances to plaintiff Redondo that Mr. Vargas was receiving adequate care at the jail. (*Id.*) However, because these facts are not alleged in plaintiffs' first amended complaint, the court cannot consider them in analyzing the merits of the county defendants' motion to dismiss.

i. Adequacy of Pleadings

In moving to dismiss, the state defendants primarily dispute whether plaintiffs have sufficiently alleged facts to support their deliberate indifference claim under the Fourteenth Amendment. With respect to whether the state defendants' conduct was objectively reasonable, the allegations of plaintiffs' first amended complaint are even less concrete than their allegations in support of their claim against the county defendants. For instance, plaintiffs do not allege that the state defendants were put "on notice" of Mr. Vargas's incompetence to stand trial. Rather, plaintiffs allege more generally that Napa State Hospital "never complied with" the state court's order, and that the state defendants "operated the Napa State Hospital in a manner which left it chronically unable to promptly accept inmates per orders of the superior courts of the state," resulting in Mr. Vargas's unnecessary death. (*Id.* ¶ 32.)

These facts as pled are insufficient to support a plausible inference that a reasonable officer in either of the state defendants' shoes would have been aware of Mr. Vargas's serious medical needs. To the extent plaintiffs bring this claim against defendants Ahlin and Matteucci in their supervisorial capacities, in order to state a cognizable claim they must specifically allege facts to support a causal link between each defendant and the claimed constitutional violation— such as, for example, each defendant's personal involvement in decisions to transfer, admit, or provide care to patients. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (noting that supervisory liability under § 1983 is appropriate if there exists "personal involvement in the constitutional deprivation"); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

Because plaintiffs have failed to plead facts sufficient to state a claim against the state defendants, their first amended complaint must be dismissed with respect to the claims brought against those defendants.

ii. Duty to Provide Medical Care

The state defendants also argue they owed Mr. Vargas no legal duty to provide medical care in part because he was not in their physical custody when he committed suicide. *See, e.g.*,

*Lacey*, 693 F.3d at 915 ("A person 'subjects' another to the deprivation of a constitutional right . . . if he . . . omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."). Thus, even if plaintiffs could plead additional facts, the state defendants contend that no cognizable claim can be stated against them.

In general, it has been held that the duty to protect substantive due process rights attaches when a state "takes a person into its custody and holds him there against his will." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198–202 (1989); *see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011) ("The types of custody triggering [this duty] are 'incarceration, institutionalization, or other similar restraint of personal liberty.'" (quoting *DeShaney*, 489 U.S. at 200)). The rationale behind the recognition of this duty is that "[w]hen the state puts a person in danger, the Due Process Clause requires the state to protect him to the extent of ameliorating the incremental risk." *Archie v. City of Racine*, 847 F.2d 1211, 1222 (7th Cir. 1988).[9] As such, correctional facilities have an obligation to protect the substantive liberty interests of prisoners, including access to adequate healthcare. *See Castro*, 833 F.3d at 1067–68 (stating pretrial detainees may sue state officials under the Fourteenth Amendment and that such claims are subject to a "deliberate indifference" standard).

---

[9] The heightened risks experienced by mentally ill persons entering the criminal justice system are well-recognized. Courts have long held that legally incompetent persons are incapable of adequately defending themselves against criminal charges, and therefore cannot be tried and convicted of criminal charges. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010). At the same time, the lengthy detention of mentally incompetent individuals with pending criminal charges can pose a risk to their due process rights. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *United States v. Strong*, 489 F.3d 1055, 1061 (9th Cir. 2007); *see also Craft v. Superior Court*, 140 Cal. App. 4th 1533, 1545 (2006) ("[W]here there is no commitment and no treatment, the time an incompetent defendant spends in jail is unnecessary and implicates not only due process but also counts toward a finding of prolonged incarceration under the state constitutional speedy trial guarantee."). Criminal courts and correctional facilities are poorly equipped to handle the mentally ill and to protect against these risks. *See Trueblood v. Washington State Dep't of Social and Health* Services, 101 F. Supp. 3d 1010, 1013 (W.D. Wash. 2015) ("Jails are not hospitals, they are not designed as therapeutic environments, and they are not equipped to manage mental illness or keep those with mental illness from being victimized by the general population of inmates."), *overruled on other grounds by* 822 F.3d 1037 (9th Cir. 2016); *see also* Darrell Steinberg, David Mills & Michael Romano, *When Did Prisons Become Acceptable Mental Healthcare Facilities?*, Stan. L. Sch. Three Strikes Project (2015) (discussing the history of deinstitutionalization in California, the corresponding increase in incarceration of mentally-ill persons, and the difficulties facing those persons).

While physical custody of a person may impose certain constitutional obligations on a state actor, the court is unpersuaded that such physical custody is *required* for those obligations to attach. There is no clear guidance as to whether a pretrial detainee, committed by a state court to treatment at a separate facility but prior to being transferred, may bring a deliberate indifference claim under § 1983 against employees of that treatment facility. In considering this issue, the court turns to state law governing the treatment of defendants deemed mentally incompetent to stand trial. *See generally* Cal. Penal Code § 1370; *In re Loveton*, 244 Cal. App. 4th 1025, 1029–30 (2016) (describing statutory scheme); *People v. Brewer*, 235 Cal. App. 4th 122, 129–32 (2015) (same); *see also DeMontiney v. Desert Manor Convalescent Ctr., Inc.*, 144 Ariz. 6, 9 (1986) (turning to the state statute governing contracts between county jails and healthcare providers to determine the scope of the duty to provide adequate medical care to a detainee).

California Penal Code § 1370 provides that upon a finding of mental incompetency, the state court "shall commit the patient to the State Department of State Hospitals" for purposes of directing the detainee to be confined in a particular state hospital or other treatment facility. § 1370(a)(5). The statute further specifies that the state court "shall order that the mentally incompetent defendant be delivered by the sheriff to a state hospital . . . as directed by the State Department of State Hospitals . . . ." § 1370(a)(1)(B). When the state court issues its order, it is required to provide copies of certain documents pertaining to the detainee to the Department of State Hospitals, including copies of the detainee's commitment order and any existing psychiatric examinations or evaluation reports. *See* § 1370(a)(3). The statute also requires the state hospital's medical director to make a written report regarding the detainee's progress toward recovery within ninety days of commitment. *See* § 1370(b)(1) (requiring that thereafter the medical director submit similar written reports to the court at six-month intervals). Taken together, these requirements establish the Department of State Hospitals has certain custodial duties over the detainee, for Fourteenth Amendment purposes, which attach at the moment the state court issues its commitment order. In this case, assuming plaintiffs allege facts supporting a plausible inference that the state defendants would have been aware of the state court's commitment order, it is certainly conceivable that each of the state defendants could be found to

12

have owed a duty to provide constitutionally adequate medical care to Mr. Vargas under the Fourteenth Amendment.

### iii. Duty to Effectuate Mr. Vargas's Timely Transfer and Admission

In a related argument, the state defendants also contend that they had no affirmative duty to ensure Mr. Vargas's timely transfer and admission to Napa State Hospital.

The Ninth Circuit has recognized that incapacitated pretrial detainees have liberty interests in freedom from incarceration and in restorative treatment under the due process clause of the Fourteenth Amendment. *Mink*, 322 F.3d at 1121. Finding no countervailing "legitimate state interest in keeping mentally incapacitated criminal defendants locked up in county jails for weeks or months," the court in *Mink* concluded that a state hospital violates a pretrial detainee's substantive due process rights when it unreasonably delays admission to the treatment facility. *Id.*

Here, the state defendants argue that *Mink* is distinguishable because in that case, the Ninth Circuit explicitly found that the state hospital in Oregon was "solely responsible for the timely treatment of incapacitated criminal defendants." *See id.* at 1120–21. However, as the court has described above, California's statutory scheme governing the treatment of these pretrial detainees imposes a degree of responsibility on *both* the state hospitals and the relevant county sheriffs' authorities. Specifically, the requirement that state hospitals issue a report regarding the detainee's progress ninety days from the date of the commitment order—not the date of detainee's admission to the hospital—obligates the state hospitals to, at the very least, ensure that detainees are transferred to the state hospital within sufficient time to be evaluated, to be prescribed treatment, and for progress to be reported to the state court no more than ninety days from the date of the commitment order. *See* Cal. Penal Code § 1370(b)(1); *see also In re Mille*, 182 Cal. App. 4th 635, 650 (2010). As with the state hospital officials' duty to provide adequate medical treatment, the duty to ensure timely transfer and admission here also attached when the state court ordered the commitment of Mr. Vargas to the care of the Department of State Hospitals.

/////

While there is apparently no binding authority with regard to "what constitutes a reasonable time to effectuate a transfer from the county jail to a state mental hospital for evaluation and treatment," one California court addressing that issue has concluded that in light of the ninety-day evaluation requirement under § 1370(b)(1), delivery of a pretrial detainee to a state mental hospital eighty-four days after the issuance of a commitment order is untimely and unreasonable. *See Mille*, 182 Cal. App. 4th at 649–50. Here, Mr. Vargas committed suicide roughly thirty days after the state court issued its second commitment order. At this stage of the litigation, the court cannot say that as a matter of law such a delay was reasonable under the circumstances alleged. Assuming they can allege facts sufficient to plausibly suggest that a reasonable officer in the position of the state defendants would have been made aware of Mr. Vargas's medical needs, the court concludes plaintiffs may state a deliberate indifference claim based on the state defendants' alleged failure to ensure Mr. Vargas's timely transfer and admission to Napa State Hospital.

### 2. Equal Protection Claim

Plaintiffs' third claim alleges that Mr. Vargas was not timely transferred to Napa State Hospital based on the county of his confinement, in violation of the equal protection clause of the Fourteenth Amendment. That clause provides "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal citation and quotations omitted); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity" and is subject to rational basis review. *Heller v. Doe*, 509 U.S. 312, 319 (1993); *see also F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013). Under rational basis scrutiny, a challenged classification must be upheld so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach*, 508 U.S. at 313.

/////

In their first amended complaint, plaintiffs allege that "detainees in other counties were being given priority admissions to the detriment of Mr. Vargas," in violation of his equal protection rights. (Doc. No. 11 ¶ 37.) This vague and conclusory allegation, however, is insufficient to state a cognizable claim. To survive a motion to dismiss, plaintiffs must allege, at minimum, facts supporting a plausible inference that those other detainees referred to in their complaint were similarly situated—for example, that their transfers were subject to court orders issued at or around the same time, or that the circumstances for their admittance were similar to those of Mr. Vargas—and that the reasons for the delay in Mr. Vargas's admission to Napa State Hospital are not rationally related to a legitimate state interest. Absent such factual allegations, the court has no basis from which to infer that no rational basis existed for the treatment of Mr. Vargas based on his county of confinement.[10]

---

[10] As background, scholars have noted a growing pattern nationally of significant delays occurring between a state court order committing an incompetent defendant, and the actual physical transfer of the defendant. *See* Hal Wortzel et al., *Crisis in the Treatment of Incompetence to Proceed to Trial: Harbinger of a Systemic Illness*, J. Am. Acad. Psychiatry & L., 257–63 (2007) ("Across the nation, a growing number of defendants judged incompetent to proceed (ITP) to trial are unable to access needed mental health care because of critical shortages of state hospital psychiatric beds and funding. Many of these patients languish in jails and prisons that lack the resources to provide adequate care during their prolonged wait for treatment."). The California Court of Appeal for the First Appellate District recently described the legal and practical challenges facing the Napa State Hospital in timely admitting pretrial detainees deemed incompetent to stand trial, including the existence of some county-specific standing orders requiring the admission of detainees within a specified amount of time:

> DSH-Napa [Napa State Hospital] is statutorily precluded from having more than 980 patients—including both IST [incompetent to stand trial] defendants and other patients—in its secured treatment area. (*See* Cal. Welf. & Inst. Code § 7200.06.) The hospital generally has an IST waiting list of about 100 patients, and can only admit new patients as current IST patients are discharged back to the county as competent. Only about seven to 10 beds a week open up for new patients, so patients are waiting over 60 days from receipt of the 1370 packet for a bed. Patients are placed on the waiting list based on when their packets are complete. In addition, several counties have placed deadlines requiring that a patient be admitted by a certain date. At the time of the hearing, DSH-Napa was unable to meet those deadlines. However, patients from counties with standing orders are moved to the top of the admission list.

*Loveton*, 244 Cal. App. 4th at 1025.

Accordingly, the court will dismiss the equal protection claim presented in plaintiffs' first amended complaint as inadequately pled.

### 3. Qualified Immunity

Finally, the state defendants argue they are entitled to qualified immunity. When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Here, because each of plaintiffs' § 1983 claims against the state defendants are being dismissed, the court need not address the issue of qualified immunity at this time.

## B. State Law Claim for Failure to Obtain Medical Care

The fifth claim for relief in plaintiffs' amended complaint alleges violations of California Government Code §§ 844.6 and 845.6 by the county defendants. In their motion to dismiss, the county defendants primarily challenge the sufficiency of plaintiffs' claim with respect to § 845.6.[11]

Section 845.6 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov't Code § 845.6. California courts have narrowly interpreted § 845.6 to create limited liability only when (1) the public employee knows or has reason to know of the need of (2) "immediate medical care," and (3) "fails to take reasonable action to summon such medical care." *Castaneda v. Dep't of Corrs. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013). Section 845.6

---

[11] To the extent the county defendants also challenge plaintiffs' claim with respect to § 844.6, the county defendants indicated at the hearing on the pending motion that they are doing so based on the same alleged failure to obtain medical care. *See* Cal. Gov't Code § 844.6(d) ("Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.").

16

"neither encompasses a duty to provide reasonable medical care, nor includes a concomitant duty to assure that prison medical staff properly diagnose and treat the medical condition, nor imposes a duty to monitor the quality of care provided." *Id.* at 1072.

As with their deliberate indifference claim, plaintiffs have not adequately alleged facts in their first amended complaint with respect to whether or how the county defendants had reason to know of Mr. Vargas's need for immediate medical care. Accordingly, plaintiffs' claim under § 845.6 will also be dismissed.

**C.      Leave to Amend**

For the reasons explained above, the motions to dismiss filed on behalf of the county and state defendants as to certain claims presented in the first amended complaint must be granted. The court has carefully considered whether plaintiffs may further amend their complaint to state claims upon which relief can be granted. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988); *see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments). At this early stage of the litigation, the court cannot conclude that the granting of further leave to amend would be futile. Accordingly, plaintiffs will be granted an opportunity to amend their complaint as to each of their claims in order to attempt to cure the deficiencies addressed in this order.

However, in granting leave to amend, the court further cautions that to the extent plaintiffs maintain § 1983 claims against any defendants acting in a supervisory capacity—including, for example, defendants Binnewies, Hart, Ahlin, and Matteucci—they are required in any second amended complaint to allege facts regarding (1) each defendant's personal involvement in the alleged constitutional deprivations, or (2) sufficient causal connection between each defendant's conduct and the deprivation. *See Starr*, 652 F.3d at 1207 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

/////

# CONCLUSION

For the reasons set forth above,

1. The county defendants' motion to dismiss (Doc. No. 27) and the state defendants' motion to dismiss (Doc. No. 34) are granted;
2. Plaintiffs' first amended complaint (Doc. No. 11) is dismissed with leave to amend;[12]
3. Any second amended complaint plaintiffs elect to file must be filed within 21 days of the date of this order; and
4. Any failure to file a second amended complaint within the time provided will likely result in the dismissal of this action.

IT IS SO ORDERED.

Dated: **May 25, 2017**

UNITED STATES DISTRICT JUDGE

---

[12] Plaintiffs' have alleged a state law negligence claim in their first amended complaint. However, the court declines to exercise supplemental jurisdiction over that claim at this time in the absence of any cognizable claims under federal law.