UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ARMANDO VARGAS and GLORIA REDONDO,<br><br>Plaintiffs,<br><br>v.<br><br>DOUG BINNEWIES, CODIE HART, DEPUTY COOPER, DEPUTY SMALLS, DEPUTY REEDER, DEPUTY DAY, DEPUTY DETRICH, DEPUTY JAY, PAMELA AHLIN, and DOLLY MATTEUCCI,<br><br>Defendants. | No. 1:16-cv-01240-DAD-EPG<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS</u><br><br>(Doc. Nos. 47, 49) |

This matter is before the court on defendants' motions to dismiss plaintiffs' second amended complaint. A hearing on these motions was held on October 3, 2017. Attorneys Jeffrey Eisinger and William Schmidt appeared on behalf of plaintiffs Estate of Armando Vargas and Gloria Redondo. Attorney Steven M. Crass appeared on behalf of defendants Mariposa County Sheriff Doug Binnewies, Lieutenant Codie Hart, and Deputies Cooper, Smalls, Reeder, Day, Detrich, and Jay. Deputy Attorney General Wilfred Fong appeared on behalf of defendants Pamela Ahlin and Dolly Matteucci. For the reasons set forth below, the court will grant in part and deny in part defendants' motions to dismiss.

/////

1

**BACKGROUND**

This case concerns the suicide of Armando Vargas on or about September 15, 2015, while he was a pretrial detainee at the Mariposa County Jail. In their second amended complaint (Doc. No. 46, hereinafter "SAC") plaintiffs allege as follows. Prior to his death, Mr. Vargas had a long history of suffering from mental health disorders, including schizophrenia, delusions, and psychosis. (SAC at ¶ 18.) He also had a history of attempted suicide and was previously designated as a suicide risk by both prison officials and mental health professionals. (*Id.*) Mr. Vargas was arrested on February 1, 2015 after exhibiting "bizarre" and "irrational" behavior and then detained at the Mariposa County Jail, a relatively small jail facility with a maximum capacity of approximately sixty inmates. (*Id.* at ¶ 15.) In the jail intake forms, jail employees noted that Mr. Vargas had previously exhibited mental health and medical problems while confined in other facilities. (*Id.* at ¶ 16.)

On February 9, 2015, based on concerns expressed by his counsel in his pending criminal, the Mariposa County Superior Court ordered a mental evaluation of Mr. Vargas. (*Id.*) Based on that evaluation, the state court judge presiding over his case deemed Mr. Vargas incompetent to stand trial or assist in his own defense. (*Id.*) The evaluation, which was provided to the Mariposa County Jail, also opined that Mr. Vargas would need ongoing anti-psychotic medication to restore his mental competency. (*Id.*) Therefore, on March 24, 2015, the state court ordered that Mr. Vargas be transferred to the Napa State Hospital, one of five state hospitals overseen by the California Department of State Hospitals. (*Id.* at ¶ 17.)[1] Staff members of the Mariposa County Jail are responsible for transporting pretrial detainees to state hospitals. (*Id.*) After a short stay, Mr. Vargas was declared by Napa State Hospital medical staff to be competent to stand trial and was returned to the Mariposa County Jail. (*Id.*)

Upon his return to the Mariposa County Jail, Mr. Vargas again displayed signs of mental instability. (*Id.* at ¶ 19.) Staff members of the Mariposa County Jail had access to Mr. Vargas's criminal history, which reflected that he had previously been found incompetent to stand trial.

---

[1] *See also* California Dep't of State Hospitals – Hospitals, http://www.dsh.ca.gov/hospitals/ (last visited Mar. 20, 2018).

(*Id.* at ¶ 18.) On July 9, 2015, the state trial court once again sought a mental evaluation of Mr. Vargas. (*Id.* at ¶ 20.) On July 30, 2015, the Mariposa County Superior Court again found that Mr. Vargas was incompetent and issued an order to that effect that was copied to the Mariposa County Jail. (*Id.* at ¶ 19.) On August 20, 2015, after further evaluations, the court again found Mr. Vargas incompetent to stand trial and ordered his transfer back to the Napa State Hospital. (*Id.* at ¶ 20.) However, there was a delay in transporting Mr. Vargas to the Napa State Hospital, during which time he did not receive medication for treatment of his mental health conditions. (*Id.* at ¶ 21.)

In a letter he wrote to the Harper Medical Group, dated August 26, 2015, Mr. Vargas stated he believed he would be killed if returned to the state hospital and that he would not let that happen. (*Id.* at ¶ 22.) On September 15, 2015, Mr. Vargas said goodbye to jail staff and other inmates. (*Id.* at ¶ 23.) He was found hanging from a bunk in his cell at the jail shortly thereafter. (*Id.*)[2] On September 20, 2015, Mr. Vargas was declared brain dead and his heart stopped beating. (*Id.*)

Plaintiff Gloria Redondo, Mr. Vargas's mother, commenced this action as the successor in interest of, and with, Mr. Vargas's estate, on August 23, 2016. Plaintiffs bring this action against two groups of defendants: (1) defendants Mariposa County Sheriff Doug Binnewies, Lieutenant Codie Hart, and Deputies Cooper, Smalls, Reeder, Day, Detrich, and Jay, who are all members of the Mariposa County Sheriff's Department (collectively, the "county defendants"); and (2) defendants Pamela Ahlin, the director of the California Department of State Hospitals, and Dolly Matteucci, the director of the Napa State Hospital (collectively, the "state defendants").

On May 25, 2017, the court issued an order granting defendants' motions to dismiss plaintiffs' first amended complaint ("FAC") with leave to amend. (Doc. No. 45.) Plaintiffs filed a second amended complaint on June 15, 2017. (Doc. No. 46.) On June 26, 2017, the state defendants filed once again moved to dismiss. (Doc. No. 47.) On July 7, 2017, the county defendants filed a motion to dismiss the second amended complaint. (Doc. No. 49.) Plaintiffs

---

[2] Plaintiffs' second amended complaint does not specify when Mr. Vargas's suicide was discovered, whether that same day, or in the days between the 15th and the 20th of September.

filed oppositions to both motions on July 21, 2017.  (Doc. Nos. 50, 51.)  The state defendants filed a reply on July 31, 2017.  (Doc. No. 54.)  The county defendants filed a reply on August 8, 2017.  (Doc. No. 55.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  It is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**DISCUSSION**

**A.     Federal Civil Rights Claims**

The Civil Rights Act, pursuant to which plaintiffs allege their constitutional claims here, provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to make out a valid claim under § 1983, a plaintiff must allege and eventually prove that: (1) the conduct complained of was committed by a person acting under color of state law; (2) this conduct deprived a person of constitutional rights; and (3) there is an actual connection or link between the actions of the defendants and the deprivation allegedly suffered by decedent. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–695 (1978); *Rizzo v. Goode*, 423 U.S. 362, 370–371 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between her and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

1. <u>Deliberate Indifference</u>

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14 § 1. Fourteenth Amendment protections cover a procedural as well as a substantive sphere, such that they bar certain government actions regardless of the fairness of the procedures used to implement them. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Here, because Mr. Vargas was a pretrial detainee at the time of the alleged incidents, his right to be free from cruel and unusual punishment is derived from the due process clause of the Fourteenth Amendment rather than the

5

Eighth Amendment. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause.").

The duty to protect detainees from suicide is grounded in the substantive liberty interest to adequate medical care. *See Johnson v. Meltzer*, 134 F.3d 1393, 1397 (9th Cir. 1998); *see also Schwartz v. Lassen County ex rel. Lassen Cty. Jail (Detention Facility)*, 838 F. Supp. 2d 1045, 1052 (E.D. Cal. 2012). Under the due process clause, "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting *Carnell v. Grim*, 74 F.3d 977, 979 (9th Cir. 1996)), *overruled on other grounds, Castro*, 833 F.3d at 1076.

The Ninth Circuit has clarified that, in the context of pretrial detainees protected by the Fourteenth Amendment, deliberate indifference is interpreted solely from an objective perspective and has no subjective component. *Castro*, 833 F.3d at 1069–70. Rather, "a pretrial detainee who asserts a due process claim for failure to protect [must] prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 1070–71. Thus, plaintiffs here must plead four elements in stating their deliberate indifference claim: (1) "[t]he defendant made an intentional decision with respect to the conditions under which the [decedent] was confined"; (2) "[t]hose conditions put the [decedent] at substantial risk of suffering serious harm"; (3) "[t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "[b]y not taking such measures, the defendant caused the [decedent's] injuries." *Id.* at 1071. Regarding the third element, the defendant's conduct must be objectively unreasonable, which is determined based on the "facts and circumstances of each particular case.' *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

/////

/////

*a.     County Defendants*

In their first cause of action for deliberate indifference, plaintiffs allege that the county defendants failed to prevent Mr. Vargas's suicide while he was incarcerated at the Mariposa County Jail.  Specifically, plaintiffs allege that county defendants were on notice of Mr. Vargas's mental health condition and past history of suicide attempts, yet still denied him access to medication for his mental illnesses, failed to place him in a suicide prevention cell where he could not hang himself, and failed to otherwise properly monitor him.  (SAC at 13–15.)  The county defendants argue that the SAC fails to allege sufficient facts indicating that they were aware of Mr. Vargas's risk of suicide and is also deficient in addressing the county defendants as a group, rather than as individuals.  (Doc. No. 49 at 8–11.)

The court concludes that, in alleging additional facts that were not stated in their FAC, plaintiffs have adequately stated a deliberate indifference claim and that the allegations of the SAC adequately alleges that each of the county defendants was aware of Mr. Vargas's serious medical need.  In the order granting defendants' previous motion to dismiss, the court stated that plaintiffs "have not alleged that any of Mr. Vargas's previously documented troubling behaviors occurred at the county jail, or that the jail officials had access to the documentation detailing Mr. Vargas's mental health condition."  (Doc. No. 45 at 8.)  In their SAC, however, plaintiffs allege that while Mr. Vargas was incarcerated at the county jail, he wrote letters that revealed his deteriorating mental health condition, which the county defendants would have been made aware of through their practice of reviewing all outgoing inmate mail.  (SAC at 13.)  Additionally, plaintiffs have now alleged that while Mr. Vargas was incarcerated at the county jail, he continually and loudly demanded anti-psychotic drugs from the deputies, which put them on notice of his serious medical need.  (*Id.*)  Plaintiffs also now allege that the state court issued an order on July 30, 2015 finding Mr. Vargas incompetent to stand trial, which was served on defendants Binnewies and Hart and distributed to the remaining county defendants.  (*Id.*)  Plaintiffs have now described interactions between plaintiff Redondo and defendant Hart regarding Mr. Vargas's medical condition, in which defendant Hart provided assurances that Mr. Vargas was receiving adequate care at the jail.  (*Id.*)

7

These allegations are sufficient to link the county defendants to the alleged constitutional violations. As pled, the SAC alleges defendants were aware that Mr. Vargas had a prior history of mental health conditions that required medical treatment and intentionally ignored those indications, which allowed Mr. Vargas the foreseeable opportunity to commit suicide. Though plaintiffs do not distinguish between the individual defendant deputies, instead referencing them collectively, these defendants are all alleged to have had "involvement in the care and supervision of Vargas during his detention, . . . notice of his mental condition, . . . and [to have failed] to take any steps that would have protected him from harm. . . ." (SAC at 4.) Plaintiffs also allege that all of these events occurred in the confines of a small county jail where the staff is familiar with personal details pertaining to repeat detainees, such as Mr. Vargas. (*Id.* at 8.) In this context, and because plaintiffs have now alleged that Mr. Vargas's medical condition and his propensity for suicide was well known by the county defendants, the court concludes that the allegations of the SAC are sufficient to survive a motion to dismiss as to those defendants. *See Palakovic v. Wetzel*, 854 F.3d 209, 226 (3d Cir. 2017) (reversing district court's dismissal of a deliberate indifference claim following a prison suicide in which a group of prison officials were alleged to have knowledge of decedent's mental health issues and of the severe psychological harm of solitary confinement); *Viero v. Bufano*, 901 F. Supp. 1387, 1393 (N.D. Ill. 1995) (denying motion to dismiss deliberate indifference claim against prison officials following the prison suicide of an individual with history of mental health conditions).

Similarly, the court concludes plaintiffs have alleged facts sufficient to support a punitive damages claim under § 1983. In addition to alleging an objectively unreasonable disregard to the fact that decedent posed a high risk of suicide, plaintiffs have alleged facts supporting the plausible inference that the county defendants had actual knowledge of Mr. Vargas's serious medical need, and acted with recklessness or callous indifference to his rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) ("[W]e have recognized that [i]t is well-established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a

/////

reckless or callous indifference to the constitutional rights of others." (citations and internal quotations omitted)).

    b.  *State Defendants*

Plaintiffs assert a second cause of action for deliberate indifference against the state defendants, based on their alleged failure to provide restorative treatment to or timely accept transfer of Mr. Vargas from the county jail. (SAC at 15–18.) In this regard, plaintiffs allege that the state had a policy of delaying admission of detainees to mental health facilities. (*Id.*) Plaintiffs allege that defendants Ahlin and Matteucci "operated the Napa State Hospital in a manner which left it chronically unable to promptly accept inmates per order of the superior courts of the state," which resulted in Mr. Vargas's suicide. (Doc. No. 45 at 10.) In moving to dismiss, the state defendants argue that allegations in the SAC with respect to the claims against them are conclusory, vague, and speculative, with no factual allegations that the state defendants knew of Mr. Vargas's need for expedited medical attention. (Doc. No. 47-1 at 8–11.)

In addition to the allegations in the SAC, plaintiffs reference newspaper articles and an Americans Civil Liberties Union press release, each describing the lengthy delays that California pretrial detainees who have been declared incompetent face in being transferred from county jails to treatment facilities. (*Id.*) Though these additional allegations bolster plaintiffs' contention that the delay Mr. Vargas experienced was part of a larger statewide phenomenon, they do not rectify the deficiencies of the SAC. Specifically, plaintiffs have still failed to alleged facts from which it could be plausibly inferred that either of the named state defendants would have been made aware of Mr. Vargas's serious medical needs. (SAC at ¶ 33.) As discussed in the court's prior order granting defendants' motion to dismiss, to the extent plaintiffs bring their claims against defendants Ahlin and Matteucci in their supervisorial capacities, they must specifically allege facts to support a causal link between the acts or inaction of each defendant and the claimed constitutional violation—such as, for example, each defendant's personal involvement in decisions to transfer, admit, or provide care to patients. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (noting that supervisory liability under § 1983 is appropriate if there exists "personal involvement in the constitutional deprivation"). As the court stated in that order, if

9

"plaintiffs allege facts supporting a plausible inference that the state defendants would have been aware of the state court's commitment order, it is certainly conceivable that each of the state defendants could be found to have owed a duty to provide constitutionally adequate medical care to Mr. Vargas under the Fourteenth Amendment." (Doc. No. 45 at 13.)

Here, despite the amendment of their complaint, plaintiffs have not alleged facts that, if proven, would establish that state defendants Ahlin and/or Matteucci were responsible for decisions made that either specifically impacted Mr. Vargas directly or indirectly. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). Instead, plaintiffs merely allege that because defendant Ahlin served as the head of the California Department of State Hospitals and defendant Matteucci served as the head of Napa State Hospital, they were responsible for the manner in which both of those entities operated. (SAC at 16.)[3] Notably, plaintiffs do not allege in the SAC that the state defendants knew or should have known of the state court's commitment order. As a result, the SAC does not allege sufficient facts to establish a plausible claim that the state defendants failed to satisfy their duty to provide Mr. Vargas medical care.

Similarly, plaintiffs fail to plead sufficient facts to state a claim based on the state defendants' alleged failure to ensure Mr. Vargas's timely transfer and admission to Napa State Hospital. Plaintiffs have failed to allege any facts plausibly suggesting that a reasonable state officer in the shoes of the state defendants would have been aware of Mr. Vargas's medical needs. (*See* Doc. No. 45 at 14.) Accordingly, plaintiffs have failed to state a cognizable deliberate indifference claim against the state defendants.

2. Equal Protection Claim

Plaintiffs' third cause of action alleges that the state defendants did not timely transfer Mr. Vargas to Napa State Hospital due to the county of his confinement, in violation of the Equal

---

[3] To the extent that plaintiffs intend to bring this claim against defendants Ahlin and Matteucci in their official capacities for damages, such a claim is not permitted under § 1983. *See Kentucky v. Graham*, 473 U.S. 159, 170 (1985) (holding that a § 1983 damages action cannot be brought against a state official in their official capacity).

10

Protection Clause of the Fourteenth Amendment. (SAC at 18–19.) According to plaintiffs, county jails throughout California hold detainees like Mr. Vargas, who have been deemed incompetent to stand trial, yet those detainees receive differing treatment depending on whether they are held in counties that have issued standing orders mandating their expedited transfer to treatment facilities. (*Id.* at 18.) Plaintiffs allege generally that "[p]atients from counties with standing orders, who were otherwise indistinguishable from Vargas, were moved to the top of the DSH admission list, while others like him languished interminably." (*Id.*) In moving to dismiss this claim the state defendants argue that plaintiffs have not alleged sufficient facts to show unequal treatment or the lack of any rational basis for the challenged government action. (Doc. No. 47-1 at 11.)

The Equal Protection Clause of the Fourteenth Amendment provides "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal citation and quotations omitted); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity" and is subject to rational basis review. *Heller v. Doe*, 509 U.S. 312, 319 (1993); *see also F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013). Under rational basis scrutiny, a challenged classification must be upheld so long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach*, 508 U.S. at 313. "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320–21 (citation and internal punctuation omitted).

Courts have noted that "rational basis review at the motion to dismiss stage poses unique challenges." *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014) (citing *Immaculate Heart Cent. Sch. v. New York State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204, 211 (N.D.N.Y. 2011)). As one circuit court has explained:

> "The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim."

*Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) (citation omitted). However, a plaintiff alleging an equal protection violation must still plead facts in their complaint establishing that there is not "any reasonable conceivable state of facts that could provide a rational basis for the classification." *Hettinga v. United States*, 677 F.3d 471, 479 (D.C. Cir. 2012) (citing *Dumaguin v. Sec'y of Health and Human Servs.*, 28 F.3d 1218, 1222 (D.C. Cir. 1994)). Accordingly, "[t]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classification." *Wroblewski*, 965 F.2d at 460; *see also A.J. California Mini Bus, Inc. v. Airport Comm'n of the City & Cty. of San Francisco*, 148 F. Supp. 3d 904, 918 (N.D. Cal. 2015).

Plaintiffs first briefly argue that their equal protection claim should be subject to strict scrutiny because his claim of deliberate indifference asserts a fundamental right. (Doc. No. 50 at 8.) This argument is not persuasive. Plaintiffs' claim is that Mr. Vargas was prioritized based on the county of his detention, which involves neither a fundamental right nor a suspect classification. *See Heller*, 509 U.S. at 319. Therefore, rational basis review applies.

Here, plaintiffs have alleged additional facts in their SAC to support a plausible inference that other pretrial detainees similarly situated to Mr. Vargas were granted priority admission to Napa State Hospital for reasons that were not rationally related to a legitimate state interest. Nonetheless, plaintiffs have failed to allege sufficient facts to overcome the presumption of rationality that applies to government classification. *See Wroblewski*, 965 F.2d at 460. In this regard, plaintiffs allege only that due to the longstanding backlog in admissions to Napa State Hospital, access to timely treatment is contingent on whether a detainee is held in a county jail with a standing order mandating transfer in an expedited fashion. (SAC at 18–19.) Plaintiffs allege that other detainees, who had also been determined incompetent to stand trial, were similarly situated to Mr. Vargas. (*Id.*) But plaintiffs merely allege in conclusory fashion that

there is no rational basis for treating similarly situated detainees differently simply based on their county of confinement without addressing whether the government classification at issue is rational. Defendants suggest potential reasons for the classification, such as priority given based on the detainees' needs for mental health treatment or the proximity of alternative treatment facilities in other counties. (Doc. No. 47-1 at 11.) Plaintiffs have failed to allege facts negating t for the classification based on the county of domicile and their equal protection claim is therefore subject to dismissal. *See Fields v. Palmdale Sch. Dist.,* 427 F.3d 1197, 1208-11 (9th Cir. 2005) (affirming dismissal in which plaintiffs failed to plead facts to support their allegation that the government action at issue had no legitimate purpose, despite inclusion of detailed information in the complaint that explained such purpose); *Hettinga*, 677 F.3d at 479 (dismissing an equal protection claim where the government had provided an explanation for classification that was rational on its face and recognized by other courts as legitimate); *Wroblewski*, 965 F.2d at 460 (dismissing an equal protection claim upon finding the facts alleged were insufficient to defeat the City policy's presumed rationality).[4]

**B.     State Law Negligence Claim**

Plaintiffs have also brought negligence claims under state law against both the county and state defendants. To state such a negligence cause of action, plaintiff must allege and eventually show "that defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013).

    1.     County Defendants

The county defendants argue that no cognizable negligence claims are stated against them because plaintiffs have failed to plead causation and do not allege that Mr. Vargas's suicide would not have occurred "but for" their alleged negligence. (Doc. No. 49 at 11.) Under California tort law, "[t]he general rule is that a jailer is not liable to a prisoner in his keeping for

---

[4] Because the court has concluded that plaintiffs have failed to allege any cognizable constitutional claims against the state defendants, it need not address the state defendants' argument for dismissal on qualified immunity grounds.

13

injuries resulting from the prisoner's own intentional conduct." *Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 349 (1976). However, a jailer is not relieved of liability if the inmate's suicide "was reasonably foreseeable or the failure to foresee such act was a factor in the original negligence." *Id.* at 351.

Here, plaintiffs have sufficiently alleged that negligent supervision by the county defendants was the actual cause of the suicide. According to the allegations of plaintiffs' SAC, Mr. Vargas made public statements that he intended to commit suicide, which made his subsequent suicide reasonably foreseeable. (SAC at 20.) Plaintiffs allege that county defendants were negligent in monitoring and controlling Mr. Vargas and thus failed to use reasonable care to prevent him from killing himself. (*Id.* at 19–20.) Despite indications that he was prone to suicide, plaintiffs further allege that the county defendants failed to house Mr. Vargas in a suicide-proof cell, which would have prevented his death. (*Id.* at 20.) Taken as true, plaintiffs' allegations that the county defendants failed to foresee the suicide risk under the circumstances alleged are adequate to state a claim of negligence against the county defendants.

2. State Defendants

Plaintiffs have also asserted a negligence claim against state defendants Ahlin and Matteucci, whom plaintiffs allege had a duty to Mr. Vargas that began once when he was determined by the state court to be incompetent to stand trial. (SAC at 20–21.) According to plaintiffs, the state defendants' failure to admit Mr. Vargas for restorative treatment prior to his suicide constituted a breach of this duty. (*Id.*) Plaintiffs also allege that the backlogs across the state mental hospital system that prevented Mr. Vargas from being admitted to Napa State Hospital in a timely fashion also constitute a breach of duty. (*Id.*)

In moving to dismiss, the state defendants argue that plaintiffs' cause of action for negligence against them is barred because the factual basis of recovery was not fairly reflected in plaintiffs' claim submitted to the California Victim Compensation and Government Claims Board on February 22, 2016, as required under California Government Code §§ 900, *et seq.* ("Government Claims Act"). (Doc. No. 47-1 at 13.) According to the state defendants, plaintiffs' state law negligence cause of action is based on a theory of unreasonable delay in transferring Mr.

14

Vargas to Napa State Hospital, which was not addressed in plaintiffs' administrative claim submitted to the California Victim Compensation and Government Claims Board. (*Id.* at 14.)

California Government Code § 945.4 provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim . . . has been presented to the public entity . . . ." The administrative claim is required to include: 1) the date, place and other circumstances surrounding the asserted claim; 2) a general description of the injury known at the time the claim was made; 3) the names of public employees causing the injury, if known. *See* Cal. Gov't Code § 910. "The purpose of these statutes is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'" *Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004) (quoting *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 454 (1974)). Courts use a test of substantial compliance in evaluating whether a plaintiff has met the demands of the claims act because "[t]he act should not be applied to snare the unwary where its purpose has been satisfied." *Elias v. San Bernardino Cty. Flood Control Dist.*, 68 Cal. App. 3d, 73 (1977).

Here, the court concludes that plaintiffs set forth facts in their government claim that were sufficient to provide the state defendants with the opportunity to investigate plaintiffs' claims. In their government claim plaintiffs stated:

> Mr. Vargas had an established history of mental difficulties including delusions and psychosis which had manifested themselves in violence and other negative behaviors. He was transferred to the Napa State Hospital from the Mariposa County Jail pursuant to court order for evaluation. The Napa State Hospital . . . removed Mr. Vargas from the medications which had been beneficial to him in the past . . . . He was then transferred back to the Mariposa County Jail. . . . Based on the care and treatment provided by the Napa State Hospital and its employees and/or contractors, Mr. Vargas' mental health deteriorated and continued on a downward trajectory while he was housed in the Mariposa County Jail. The court ordered his return back to the Napa State Hospital. Mr. Vargas killed himself before the transfer [back to the Napa State Hospital] could take place."

(Doc. No. 47-1 at 14.) This claim described the manner in which Mr. Vargas remained at Mariposa County Jail despite a court order requiring his return to Napa State Hospital. (*Id.*)

15

Plaintiffs' government claim also stated that Mr. Vargas committed suicide during the period when he was awaiting transfer back to Napa State Hospital. (*Id.*) These allegations sufficiently described the time, date, and circumstances underlying plaintiffs' claim of unreasonable delay in transferring Mr. Vargas to Napa State Hospital, despite not explicitly phrasing the claim in such exacting terms.

Under California law, new allegations in a complaint that were not presented in a government claim are not fatal to the complaint unless they are based on an entirely different set of the facts than those presented in the administrative claim. *White v. Superior Court*, 225 Cal. App. 3d 1505, 1512 (1990) (reversing trial court's summary adjudication against plaintiff because the complaint and her claim were based on the same fundamental facts involving the police officer's mistreatment of plaintiff); *see also Blair v. Superior Court,* 218 Cal. App. 3d 221, 226 (1990) (holding that a government tort claim alleging "negligent maintenance and construction of highway surface" was sufficient to provide notice of claims regarding defects in placement of highway guardrails, slope of road, presence of hazards near the roadway, and inadequate warning signs). Here, applying a more exacting standard to plaintiffs' presentation of their government claim would "eliminate meritorious actions" rather than "give the government entity notice sufficient for it to investigate and evaluate the claim. . ." *Stockett*, 34 Cal. 4th at 446. Accordingly, the court concludes that plaintiffs' negligence claim brought against the state defendants is not subject to dismissal on the grounds asserted.

**C.     State Law Claim for Failure to Obtain Medical Care**

Plaintiffs' sixth cause of action alleges violations of California Government Code §§ 844.6 and 845.6 by the county defendants. In their motion to dismiss, the county defendants primarily challenge the sufficiency of plaintiffs' claim with respect to § 845.6, which provides:[5]

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or

---

[5] To the extent the county defendants also challenge plaintiffs' claim with respect to § 844.6, they indicated at the hearing on the pending motion that they are doing so based on the same alleged failure to obtain medical care. *See* Cal. Gov't Code § 844.6(d) ("Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission.").

16

> obtain medical care for a prisoner in his custody; but . . . a public employee . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov't Code § 845.6. California courts have narrowly interpreted § 845.6 to create limited liability only when (1) the public employee knows or has reason to know of the need of (2) "immediate medical care," and (3) "fails to take reasonable action to summon such medical care." *Castaneda v. Dep't of Corrs. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013). Section 845.6 "neither encompasses a duty to provide reasonable medical care, nor includes a concomitant duty to assure that prison medical staff properly diagnose and treat the medical condition, nor imposes a duty to monitor the quality of care provided." *Id.* at 1072.

In their SAC, plaintiffs amended their allegations to include facts with respect to whether and how the county defendants had reason to know of Mr. Vargas's risk of suicide and subsequent need for immediate medical care. According to those amended allegations, the county defendants received notice that healthcare professionals had deemed Mr. Vargas to be a danger to himself and that he required anti-psychotic medications. (SAC at 21.) Plaintiffs allege that Mr. Vargas "had spoken to the [county] Defendants a short time before killing himself of his intention to do so." (*Id.*) Plaintiffs also now allege that, after learning this information, "[county defendants] chose not to house Vargas in a suicide proof room." (*Id.*) Taken as true, these allegations are sufficient to allow a reasonable inference that the county defendants were aware of Mr. Vargas's need for immediate medical care and risk of suicide, yet failed to summon medical care. Therefore, the court concludes that plaintiffs' sixth cause of action as states in the SAC adequately alleges violations of California Government Code §§ 844.6 and 845.6 on the part of the county defendants.

**CONCLUSION**

For the reasons set forth above,

1. The state defendants' motion to dismiss (Doc. No. 47) is granted in part and denied in part;

2. The county defendants' motion to dismiss (Doc. No. 49) is denied;

3. The action now proceeds on plaintiffs' deliberate indifference claim against the county defendants, plaintiffs' negligence claims against both county and state defendants, and plaintiffs' claim for failure to obtain medical care against county defendants;

4. The moving defendants shall respond to the complaint within twenty-one days of the service of this order; and

5. The action is referred to the assigned magistrate judge for an initial scheduling conference.

IT IS SO ORDERED.

Dated: **March 28, 2018**

UNITED STATES DISTRICT JUDGE